Jules C. Winkelman v. Commissioner.
Winkelman v. Commissioner
Docket No. 110209.
United States Tax Court
1943 Tax Ct. Memo LEXIS 439; 1 T.C.M. (CCH) 640; T.C.M. (RIA) 43092; February 20, 1943
*439 Barnie F. Winkelman, Esq., for the petitioner. Myron S. Winer, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: This proceeding is for the redetermination of a deficiency in income tax for the taxable year ended December 31, 1938, in the amount of $327.60. The issue is whether or not petitioner received, actually or constructively, a dividend of $5,312.50 on certain corporate stock during the taxable year. Findings of Fact Petitioner is an individual, residing in the City of Washington, District of Columbia. During the taxable year he resided at Philadelphia. Pa., and was treasurer of the Winkelman Shoe Manufacturing Co. His income tax return for the year 1938 was prepared on the basis of cash receipts and disbursements, and was filed with the collector of internal revenue for the district of Pennsylvania. During 1938, and for some time prior thereto, petitioner was a director and stockholder in Bonwit, Lennon & Co. Inc., a Maryland Corporation organized on April 5, 1916, sometimes hereinafter called the Bonwit Corporation. This corporation operated a ladies' specialty shop, with its principal office and place of business at 220 N. Charles Street, *440 Baltimore. A meeting of the board of directors of the Bonwit Corporation was held on November 16, 1937, at which petitioner and other directors were present. At that meeting, a resolution was adopted authorizing payment of compensation to certain attorneys and accountants and payment of other expenses, with the understanding that the corporation would be reimbursed therefor by petitioner to the extent and in accordance with the terms of a letter addressed by petitioner to the president of the corporation, dated November 16, 1937. In such letter, petitioner agreed to reimburse the Bonwit Corporation, out of any dividends which he might receive on his Class B stock, for all sums paid to the law firm of Fisher & Fisher for legal services in connection with the corporation's program of public financing and expansion, if all the stock of Erlebacher, Inc., was not acquired by the Bonwit Corporation on or before May 1, 1938. In the same letter petitioner further agreed to reimburse the Bonwit Corporation for all sums paid by it to certain other attorneys and accountants for services in connection with such program. Petitioner also agreed to reimburse the Bonwit Corporation for all sums *441 paid by it in connection with printing any application or prospectus for the sale of any of its stock to the public, provided that if all the outstanding stock of Erlebacher, Inc., was acquired by the Bonwit Corporation, it should repay to petitioner all sums which he might have paid to it under the provisions of his letter. A special meeting of the board of directors of the Bonwit Corporation was held on February 23, 1938, at which petitioner and other directors were present. At such special meeting a resolution was adopted declaring that the resolutions of November 16, 1937, referred to above, "be and the same are hereby repealed and stricken out," and correction resolutions were adopted to be effective as of November 16, 1937, fixing the compensation to be paid certain attorneys and providing for the payment of certain charges for printing, for which the corporation was to be reimbursed by petitioner in the manner, to the extent and subject to the provisions of a letter dated February 21, 1938, from petitioner to the president of Bonwit Corporation, which letter was declared to constitute an agreement between petitioner and the corporation as of November 16, 1937. Such letter *442 in material part reads as follows: Confirming what I told you the other day, I agree that my letter of November 16, 1937, and the Minutes of the Board meeting held that day * * * are incorrect in a number of respects. * * * At all events, my letter of November 16, 1937, should have been as follows: Confirming what I have told you and the other members of the Board of Bonwit, Lennon and Company, Incorporated, I do hereby agree as follows: 1. All sums of money heretofore paid by Bonwit. Lennon and Company, Incorporated, and all sums which it may hereafter be required to expend in reference to or in connection with the public financing of said corporation shall, in the first instance, be paid by Bonwit, Lennon and Company, Incorporated, but shall be charged to my account with said Corporation. 2. All dividends which have been declared or which may hereafter be declared on the Class B stock registered in the name of Jules C. Winkelman and wife shall be credited to my account, but none of this money or dividends shall be paid over to me or my said wife until all sums so paid out from time to time by Bonwit, Lennon and Company, Incorporated, shall have been repaid to it as set forth *443 in this letter. * * * * *
4. If, on or before January 31, 1939, the program of public financing is completed and Bonwit, Lennon and Company, Incorporated, has received the net cash sum of Two Hundred Thousand Dollars ($200,000) from the sale of its Cumulative Convertible Class A Stock, then Bonwit, Lennon and Company, Incorporated, shall pay to me the aggregate amount which, up to that time, may have been charged to my account as above set forth, and the provisions of Paragraph 5 of this letter shall not apply. 5. If, for any reason whatsoever, the aggregate of the dividends on the Class B Stock registered as above set forth shall not, on or before January 31, 1939, at least be equal to the total amounts so expended and to be expended by Bonwit, 'Lennon and Company, Incorporated, then I agree to pay Bonwit, Lennon and Company, Incorporated, on or before December 31, 1939, the total amount so expended or to be expended by it in excess of the total of said dividends. The program of financing and expansion of the Bonwit Corporation was never completed, and the corporation went into bankruptcy in the year 1939. A meeting of the board of directors of the Bonwit Corporation was held *444 on January 21, 1938, at which petitioner and other directors were present. A. G. O'Rourke, recently appointed comptroller of the corporation was, by invitation, also present. At this meeting the following resolution was adopted: RESOLVED That the Board of Directors does hereby declare, out of the net profits of the corporation for the period beginning February 1, 1937, and ending January 31, 1938, a dividend on the outstanding Class B Stock of the corporation at the rate of five cents (5") on each share of such Class B Stock, said dividend to be payable January 31, 1938, to the registered holders of said Class B Stock as shown by the records of the corporation on January 21, 1938. On January 21, 1938, petitioner and Lester R. Bonwit each owned 106,250 shares, or 50 percent each, of the outstanding Class B stock of the Bonwit Corporation. Under date of January 31, 1938, the following entry was made on the general journal of the Bonwit Corporation: Debit
Credit
Surplus Earned
$10,625.00
Lester R. Bonwit
$5,312.50
Jules C. Winkelman
5,312.50 Div. Payable on Common Stock Jan. 31, 1938. Dividend Declared by Board of Directors - of five cents on each share of the *445 outstanding Common Stock to the holders of Record Jan. 15, 1938. Payable Jan. 31, 1938. Under date of January 31, 1938, the following credit was entered on the personal account of petitioner in the general ledger of the Bonwit Corporation: 1938 Jan. 31 5" share C.S. 1/15/38 J75 $5,312.50 At the close of the fiscal year of the Bonwit Corporation ended January 31, 1938, petitioner's personal account in the general ledger of the corporation showed a debit balance of $450.21, including the dividend credit of $5,312.50. In its income and excess-profits tax return for the fiscal year ended January 31, 1938, the Bonwit Corporation claimed a cash-dividends paid credit in the amount of $11,180. The income and excess-profits tax return filed by the Bonwit Corporation for its fiscal year ended January 31, 1938, disclosed that at the end of that year it had earned surplus and undivided profits of $130,239.47, and cash on hand in the amount of $11,324.75; also that it had a net profit of $10,464.49 for such fiscal year. The dividend of $5,312.50 payable to Lester B. Bonwit was credited to his account in the general ledger of the corporation under date of January 31, 1938, and was offset by *446 his overdrafts. Bonwit reported such dividend as income in his individual income tax return for the year 1938. Opinion The sole issue in this proceeding is whether or not petitioner received a dividend of $5,312.50 on his stock in the Bonwit Corporation during the taxable year ended December 31, 1938. In the notice of deficiency, respondent held that petitioner constructively received such dividend in the taxable year, and his inclusion of the amount in income gives rise to the deficiency in controversy. However, on brief, respondent also contends that if not constructively received, the dividend was actually received in the taxable year because of the fact that it was credited to petitioner's personal account on the ledger of the corporation and applied against debit items thereon, which exceeded the dividend credit by the amount of $450.21. At the hearing, petitioner offered the testimony of the comptroller of the Bonwit Corporation for the purpose of explaining and modifying the written records of the corporation. Respondent argues that the parol evidence rule precludes our consideration of such testimony. While we have held against respondent's position on this point, *447 see Charles F. Mitchell, 45 B.T.A. 300, we think it is immaterial here for the reason that, giving full credence to the testimony of petitioner's witness, it is not decisive of the particular question presented for decision. We think it is quite clearly indicated, both by the written records and the oral testimony, that petitioner was not to receive his dividend in cash, but the real question here is whether or not it can be said he received the dividend by reason of the credit of the amount to his personal account and its application against the debit charges. It is definitely established that the dividend credit was in fact applied against the debits on petitioner's account and his liability to the corporation thereby discharged pro tanto. The account thereafter showed a debit balance of only $450.21. This action was in accordance with the provisions of petitioner's letter of February 21, 1938, which, by resolution of the board of directors, was declared to constitute an agreement between petitioner and the corporation as of November 16, 1937, and supplanted the earlier agreement. Petitioner's letter provided that all sums of money theretofore *448 paid by the Bonwit Corporation and all sums which it might thereafter be required to expend in connection with public financing should, in the first instance, be paid by the corporation but should be charged to petitioner's account with the corporation. The letter constituting the agreement further provided that all dividends theretofore or thereafter declared on petitioner's Class B stock should be credited to his account, but that none of the money should be paid over to him until all sums paid out by the corporation had been repaid to it as set forth in the letter. The sums to be repaid to the corporation constituted the debit charges on petitioner's account, and were in fact repaid to the corporation by offset against the dividend credit. It was also stated, however, that if the public financing was completed and the Bonwit Corporation received $200,000 in cash from the sale of its Class A stock on or before January 31, 1939, then the corporation should pay to petitioner the aggregate amount which up to that time had been charged to his account. This provision, we think, necessarily contemplated payment to the corporation (by application of the dividend credit) of the amounts *449 charged to petitioner's account; otherwise, there would have been nothing for the corporation to repay. The public financing was never successfully completed, and, thus, the corporation never became obligated to refund to petitioner the amounts charged to his account and so paid by him. In our opinion, it follows from these provisions of the agreement that if the expenditures of the corporation were properly charged to petitioner's account, then the crediting of the dividend offset such debits and petitioner thereby received income in the taxable year to the extent of the full amount of the dividend. Certainly, the corporation's expenditures were properly charged to petitioner's account in the first instance according to the provision of the written agreement, and we find nothing in the testimony to establish an oral agreement to the contrary. On brief, petitioner states that the sole purpose of the letter of February 21, 1938, as well as the action of the board of directors on the same date, was to justify the corporate accounting, which otherwise was unwarranted by the previous agreement between the parties. But petitioner does not contend that the previous agreement was not superseded *450 by the agreement of February 21, 1938, and conceded that under the latter and controlling agreement petitioner gave the corporation the right to make the charges against his account. Respondent's determination is approved. Decision will be entered for respondent.